674 F.Supp.2d 1311 (2009)
U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff,
v.
Robin STATES (a/k/a Gregory Hampton), d/b/a Infinity Online Investors Group; and Bernadette Bowden (a/k/a Bernadette States), Defendants, and
Paul States, Relief Defendant.
Case No. 08-22027-CIV.
United States District Court, S.D. Florida.
November 2, 2009.
*1312 Alan Edelman, James H. Holl, III, Commodity Futures Trading Commission, Office of General Counsel, Washington, DC, for Plaintiff.
Robin States, Celtic Drive, Canada, pro se.
Bernadette Bowden, Celtic Drive, Canada, pro se.
Paul States, Vancouver, Canada, pro se.
ORDER OF JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND ANCILLARY EQUITABLE RELIEF AGAINST DEFENDANT BERNADETTE BOWDEN
DONALD L. GRAHAM, District Judge.
On July 14, 2008, the U.S. Commodity Futures Trading Commission filed a Complaint charging Defendant Bernadette Bowden ("Defendant" or "Bowden") and others with cheating, defrauding, and deceiving investors in violation of Sections 4b(a)(2)(i)-(iii), 4c(b), 4m(1), 4n(4), and 4o (1) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(a)(2)(i)-(iii), 6c(b), 6m(1), 6n(4), and 6o (1), and Commission Regulations 4.20, 4.21, 4.22, and 33.10(a)(c), 17 C.F.R. §§ 4.20, 4.21, 4.22, and 33.10(a)-(c).
On August 27, 2008, Bowden was properly served with the summons and complaint pursuant to Rule 4(f)(2)(C)(i) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Bowden failed to answer the Complaint within the time permitted by Fed.R.Civ.P. Rule 12(a)(1). Accordingly, on December 11, 2008, the Clerk of this Court entered a default against States.
The Commission has now submitted its Motion for Entry of Default Judgment Order With Injunctive Relief, Civil Monetary Penalties, and Other Ancillary Equitable Relief Against Defendants Robin States, Bernadette Bowden, and Paul States ("Motion") pursuant to Fed.R.Civ.P. *1313 55(b)(2). The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Motion, and other written submissions of the Commission filed with the Court, and being fully advised, hereby:
GRANTS the Commission's Motion against Bowden and enters findings of fact and conclusions of law relevant to the allegations in the Complaint. The Court further grants the Commission's request for injunctive relief, restitution, and civil monetary penalty. Accordingly, the Court now issues the following Order Of Judgment By Default, Permanent Injunction, Civil Monetary Penalty, And Ancillary Equitable Relief Against Defendant Bernadette Bowden ("Order").

I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. Findings of Fact
1. From approximately October 2004 through approximately September 2005, Robin States ("States"), doing business as Infinity Online Investors Group ("Infinity"), solicited at least 900 individuals from throughout the United States and around the world to participate in a commodity futures, options, Forex and precious metals based high-yield investment program, through, among other means, an Internet website, www.infinity-oig.com, and personal telephone solicitations.
2. Through the Infinity website, States represented that Infinity commenced operations in October 2004, and consisted of a group of three investors with over 22 years of experience in investing "both offline and online." States also claimed that Infinity "regularly [sought] the advice and assistance of some of the best known Investment Managers in the online arena today."
3. On the Infinity website, States described Infinity's investment strategy as follows:
Our team is focused on attaining consistent returns on our client's [sic] investments, while reducing risk of loss. This is done through having a strategic and balanced plan for all investments; the diversification of investments as well as maintaining a reserve fund as an insurance against loss. Our portfolio (as agreed upon by our core group as well as our assisting Investment Brokers/Analysts) is focused on trading in FOREX, Futures, Options and Precious Metals. (emphasis added)
4. Through the Infinity website, States guaranteed prospective participants daily fixed-percentage profits based on the amount of money invested and the amount of time a participant was willing to wait before being able to withdraw profits. States offered several investment plans, including the Bronze Plan, the Silver Plan, the Gold Plan, and the Platinum Plan with varying investment minimums, daily rates of return and profit redemption restrictions. Under all of these investment plans, participants could not withdraw their principal for one year from the date of investment.
5. Participants in the Bronze Plan were guaranteed daily profits ranging from 1.25% (for investments of $25-$1,000) to 1.75% (for investments of $5,001 and above) and could withdraw their profits at any time. Participants in the Silver Plan were guaranteed daily profits ranging from 1.5% (for investments of $50-$1000) to 2.00% (for investments of $5001 and above) but could not withdraw profits for three months. Participants in the Gold Plan were guaranteed daily profits ranging from 1.75% (for investments of $75-$1000) to 2.25% (for investments of $5001 and above), but could not withdraw profits for six months. Participants in the Platinum Plan were guaranteed daily profits of 2.00% (for investments of $100-$1000) to *1314 2.50% (for investments of $5001 and above), but could not withdraw profits for one year.
6. In his personal solicitations via telephone calls with prospective and current participants to solicit funds, States misrepresented his identity by holding himself out to be "Gregory Hampton." As "Hampton," States claimed to be one of the three principal owners of Infinity. In fact, the telephone number "Hampton" used to conduct his telephone solicitations was registered to States's wife, Bernadette Bowden ("Bowden"), at an address she shared with States.
7. To create the impression of Infinity's legitimacy, States, in his telephone solicitations, claimed that Infinity's trading was handled by a licensed and registered "financial assets group" in Durham, North Carolina and that Infinity coordinated daily and met weekly with this firm to ensure that the investments aligned with Infinity's strategic plan. States described this firm as an international firm that had been in existence for several years and was licensed "in some of the major centers worldwide," specifically mentioning the United States, Panama, Mexico, and Canada. States also claimed that Infinity was applying to be a licensed broker in North Carolina in order to conduct its own trading and that it was building a new headquarters in Durham, North Carolina to accommodate its expanding operation.
8. States represented that Infinity was generating profitable returns on a daily basis, as guaranteed, and that participants would reap greater profits with Infinity than if they invested with their banks. At various times, States informed prospective and current participants that Infinity was earning a return on its investments ranging from 3.15%-3.82% above and beyond its average daily payouts to investors.
9. States claimed that Infinity had 3,500 participants with a total of $2.8 million invested, all of whom were receiving timely profit payments. States further claimed that Infinity had sufficient reserves to make full refunds to participants in the event the bottom should drop out of the market.
10. As he made these representations concerning the profitability of Infinity's trading and legitimacy of its operations, States never discussed the risk of loss associated with the trading of commodity futures and options, or any of the other investments in which Infinity was purportedly engaged. To the contrary, on the home page of the Infinity website, States described investing with Infinity as a "Secure and Stable Investment Opportunity."
11. On the basis of States's representations and omissions on the Infinity website and in his solicitations via the telephone conference calls, approximately 900 individuals invested approximately $643,047 (U.S.) in Infinity, with individual investments amounts varying from $25 to $25,000.
12. The Infinity website directed participants to open and fund an individual digital currency account with one of two digital currency companies, INT Gold or e-Gold, and then to transfer their funds from the individual account into purported Infinity digital currency accounts. The Infinity digital currency accounts were held in the name of or controlled by States or Bowden.
13. The Infinity website represented that: participants could withdraw their daily profits through their Infinity account; interest on their accounts was credited at the end of each day; and that participants could check their account balances on line 24 hours a day, seven days a week.
14. Participants who tracked their investments online saw what they believed to be accruing daily profits. For example, *1315 one participant was led to believe on the basis of his online statement that for the period of August 29, 2005 through September 1, 2005, his Platinum Account had earned interest of $544.96 on August 29, $558.58 on August 30, $572.54 on August 31, and $588.86 on September 1, for a total of $2,264.94 in just four days.
15. Contrary to the representations made on Infinity's website, and by States personally in his calls with investors, pool participants' funds were never used for the trading of commodity futures, options, Forex, precious metals, or any other type of trading, either by Infinity or by any entity trading on behalf of Infinity. Infinity was not building a new headquarters in North Carolina; in fact, the location from which States claimed Infinity was operating did not exist.
16. Infinity never had anywhere near the number of investors or the amount of money invested as claimed by States; in total, Infinity had approximately 900 participants with approximately $643,047 invested.
17. Those investors who received payments from Infinity in response to their requests for withdrawal of profits did so only because States used approximately $54,412 (U.S.) of the participants' funds to pay out these requests.
18. States and Bowden directed approximately $666,167 (CAN) of the participants' funds into personal bank accounts in the names of Bowden and States's brother, Paul States. Bowden received approximately $435,686 (CAN) in this manner, while Paul States received approximately $230,481 (CAN).
19. Bowden and Paul States used the pool participants' funds for cash or to pay for personal expenses and personal goods and services, such as gambling, an automobile and payments to law firms.
20. States solicited and accepted funds from pool participants without providing any disclosure documents to pool participants before or after they invested.
21. At no time during the operation of Infinity did States provide participants with statements of account regarding the current status of all trading accounts in which each such participants had an interest in accordance with Commission Regulations.
22. At no time has Infinity, States, Hampton, or Bowden ever been registered with the Commission in any capacity.

B. Conclusions of Law
1. This Court has jurisdiction over the subject matter of this action and Bowden pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.
2. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1, in that States transacted business in this district, and the acts and practices in violation of the Act occurred within this district, among other places.
3. States and Bowden, in or in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a) of the Act, 7 U.S.C. § 6b(a), has cheated or defrauded or attempted to cheat or defraud customers or prospective customers, and/or willfully deceived or attempted to deceive persons by, among other things, making false, deceptive, or misleading *1316 representations and omissions of material facts in solicitations of individuals to trade commodity futures and/or by misappropriating customer funds all in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii).
4. States willfully made or caused to be made, or entered or caused to be entered false reports or false statements relating to the profitability of the trading of commodity futures to individuals who invested with Infinity, all in violation of Section 4b(a)(2)(ii) of the Act, 7 U.S.C. §§ 6b(a)(2)(ii).
5. Bowden willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Act, or acted in combination or in concert with States, or willfully caused acts to be done or omitted which, when directly performed or omitted, constituted States's violations of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii). Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Bowden therefore violated Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii).
6. States and Bowden, in or in connection with offers to enter into, the entry into, the confirmation of the execution of, or the maintenance of, commodity option transactions, has cheated or defrauded or attempted to cheat or defraud customers or prospective customers, and willfully deceived or attempted to deceive customers or prospective customers by, among other things, making false, deceptive, or misleading representations and omissions of material facts in solicitations of individuals to trade commodity options and misappropriating customer funds all in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulations 33.10(a) and (c), 17 C.F.R. §§ 33.10(a) and (c).
7. States willfully made or caused to be made, or entered or caused to be entered false reports or false statements relating to the profitability of the trading of commodity options to individuals who had invested with Infinity, all in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10(b), 17 C.F.R. § 33.10(b).
8. Bowden willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Act, or acted in combination or in concert with States, or willfully caused acts to be done or omitted which, when directly performed or omitted, constituted States's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10, 17 C.F.R. § 33.10. Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Bowden therefore violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10, 17 C.F.R. § 33.10.
9. States, acting as a Commodity Pool Operator ("CPO"), by the use of the mails or other means or instrumentalities of interstate commerce, employed a device, scheme, or artifice to defraud participants or prospective participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon participants or prospective participants by, among other things, making false, deceptive, or misleading representations and omissions of material facts in solicitations of participants, making, or causing to be made, false statements or reports concerning the profitability of the trading of commodity futures and options to individuals who invested with Infinity, and misappropriating participants' funds all in violation of Section 4o (1) of the Act, 7 U.S.C. § 6o (1).
10. Bowden willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Act, or acted in combination or in concert with States, or willfully caused acts to be done or omitted which, when directly performed *1317 or omitted, constituted Defendant States's violations of Section 4o (1) of the Act, 7 U.S.C. § 6o (1). Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Bowden therefore violated Section 4o (1) of the Act, 7 U.S.C. § 6o (1).
11. States, by failing to operate the Infinity pool as a separate legal entity, receiving funds from existing or prospective pool participants into accounts in his name and his wife's name instead of into accounts in the name of the pool, and by commingling pool funds with the funds of his wife and his brother, violated Commission Regulations 4.20(a)-(c), 17 C.F.R. §§ 4.20(a)-(c).
12. Bowden willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Commission Regulations, or acted in combination or in concert with States, or willfully caused acts to be done or omitted which, when directly performed or omitted, constituted States's violations of Commission Regulations 4.20(a)-(c), 17 C.F.R. §§ 4.20(a)-(c). Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Bowden therefore violated Commission Regulations 4.20(a)-(c), 17 C.F.R. §§ 4.20(a)-(c).
13. There is good cause for permanent injunctive relief in light of the egregious nature of Bowden's conduct in aiding and abetting States's fraudulent solicitation of customers and misappropriating customers' funds, as well as Bowden's high level of scienter in participating in a well-planned scheme to systematically defraud the public. These facts demonstrate a reasonable likelihood of future violations.
14. Imposition of a civil monetary penalty is appropriate in this case as Bowden's violations of the Act were intentional and directly impacted the numerous victims of this fraud. Likewise, the remedy of restitution is appropriate to compensate the victims of Bowden's wrongful acts and to deprive Bowden of the use of ill-gotten gains.

II. ORDER FOR RELIEF

A. Permanent Injunction
IT IS THEREFORE ORDERED THAT:
1. Bowden is permanently restrained, enjoined, and prohibited from directly or indirectly:
A. in or in connection with any order to make, or the making of, any contract of sale of any commodity:
(1). in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, or
(2). for any person for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,
cheating or defrauding or attempting to cheat or defraud the other person; and/or willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of subparagraph (B) above, with the other person in violation of Section 4b(a) of the Act, as amended by The Food, Conservation, and Energy Act of 2008, Pub.L. No. 110-246, § 13102, 122 Stat. 1651 (to be codified at 7 U.S.C. § 6b(a));
B. in or in connection with an offer to enter into, the entry into, the confirmation of, the execution of, or the maintenance of any commodity options transaction, cheating, *1318 defrauding, or deceiving or attempting to cheat, defraud, or deceive, any other person, and from making or causing to be made to any other person any false report or statement thereof or causing to be entered for any person any false record thereof in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 33.10(a), (b) and (c), 17 C.F.R. §§ 33.10(a), (b) and (c);
C. while acting as a CPO, using the mails or other means or instrumentalities of interstate commerce, to employ a device, scheme or artifice to defraud any clients or participants, or prospective clients or participants or engage in a transaction, practice or course of business which operates as a fraud or deceit upon any clients or participants or prospective clients or participants, in violation of Section 4o (1) of the Act, 7 U.S.C. §§ 6o; and
D. while acting as a CPO, (1) failing to operate the pool as a separate legal entity from the CPO; (2) accepting pool participant funds not in the name of the pool; and (3) commingling the property of any pool that he operates or intends to operate with the property of any other person, in violation of Regulations 4.20(a)(1), (b) and (c), 17 C.F.R. §§ 4.20(a)(1), (b) and (c);
2. Bowden is further permanently restrained, enjoined, and prohibited from engaging directly or indirectly in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4), ("commodity interest"), including but not limited to the following:
A. trading on or subject to the rules of any registered entity, at that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);
B. engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;
C. soliciting, receiving, or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;
D. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R.
§ 4.14(a)(9), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9);
E. entering into any commodity interest transactions for its own personal accounts, for any account in which it has a direct or indirect interest and/or having any commodity interests traded on its behalf; and/or
F. engaging in any business activities related to commodity interest trading.
3. The injunctive provisions of this Order shall be binding on Bowden, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Bowden, and upon any person who receives actual notice of this Order by personal service or otherwise insofar as such person is acting in active concert or participation with Bowden.

B. Restitution

IT IS FURTHER ORDERED THAT:
1. Bowden shall be jointly and severally liable with States to make restitution in the amount of $643,047 (CAN), plus pre-judgment interest and post-judgment interest. *1319 Restitution shall be paid within ten days of entry of this Order. Pre-judgment interest from October 2004, to the date of entry of this Order shall be determined by using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 662(a)(2). Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.
2. To effect payment by Bowden and distribution of restitution to investors, the Court appoints Daniel Driscoll of the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall collect restitution payments from Bowden, compute pro rata allocations to injured investors, and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, he shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud.
3. Restitution payments under this Order shall be made to the Monitor by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Infinity Online Investors Group Financial Settlement Fund and sent to Daniel Driscoll, Monitor, National Futures Association, 200 W. Madison St., # 1600, Chicago, IL XXXXX-XXXX under a cover letter that identifies States and the name and docket number of the proceeding. Bowden shall simultaneously transmit copies of the cover letter and the form of payment to the Director and the Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581. The Monitor shall oversee Bowden's restitution obligation and shall make periodic distributions of funds to investors as appropriate. Restitution payments shall be made in an equitable fashion to investors as determined by the Monitor. Should the Monitor be unable to locate certain investors after making reasonable efforts to locate such investors, the Monitor shall distribute the funds owed to those investors equitably to the other investors. Based upon the amount of funds available, the Monitor may defer distribution until such time as it deems appropriate.
4. In the event that the amount of restitution payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative costs of the making a restitution distribution is impractical, the Monitor may, in his discretion, treat such restitution payments as civil monetary penalty payments.
5. Any acceptance by the Commission and/or Monitor of partial payment of Bowden's restitution obligation shall not be deemed a waiver of Bowden's requirement to make further payments pursuant to this Order, or a waiver of the Commission's and/or Monitor's right to seek to compel payment of any remaining balance.

C. Civil Monetary Penalty

IT IS FURTHER ORDERED THAT:
1. Bowden is liable for and shall pay to the Commission a civil monetary penalty in the amount of $520,000, plus post-judgment interest pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1. The civil monetary penalties shall be paid within ten days of entry of this Order. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.
*1320 2. All payments by Bowden shall be applied to her restitution obligations under this Order until all such restitution obligations have been paid in full. Upon full payment of her restitution obligations, all payments by Bowden will be applied to her civil monetary penalty obligations under this Order.
3. Bowden shall pay such civil monetary penalties by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order made payable to the Commission and sent to the address below:
Commodity Futures Trading Commission
Division of Enforcement
Attn: Marie Bateman-AMZ-300, DOT/FAA/MMAC
6500 S. Macarthur Blvd.
Oklahoma City, OK 73169
If the payment is to be made by electronic funds transfer, contact Marie Bateman at XXX-XXX-XXXX for instructions. Bowden shall accompany the payment of her penalties with cover letters that identify Bowden and the name and docket number of this proceeding. Bowden shall simultaneously transmit a copy of the cover letter and the form of payment to: Office of the Director and Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, D.C. 20581.
4. Any acceptance by the Commission of partial payment of Bowden's civil monetary obligations shall not be deemed a waiver of Bowden's requirement to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

D. Prohibition on Transfer of Funds
IT IS FURTHER ORDERED that Bowden shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Commission, the Monitor, or any officer that may be appointed by the Court.

E. Cooperation
IT IS FURTHER ORDERED THAT Bowden shall cooperate fully with the Commission, the Monitor, and/or any government agency seeking to enforce the restitution and civil monetary provisions of this Order by providing any requested information relating to her financial status, including, but not limited to income and earnings, assets, financial statements, assets transfers, and tax returns.

F. Notice

IT IS FURTHER ORDERED THAT:
1. In the event that Bowden changes her residential or business telephone number(s) and/or address(es) at any time, she shall provide written notice of the new number(s) and/or address(es) to the Commission within ten calendar days thereof.
2. All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:
Notice to Commission: Alan Edelman
Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Telephone (202) 418-5000
Facsimile (202) 418-5538

G. Equitable Relief Provisions Binding
IT IS FURTHER ORDERED THAT the equitable relief provisions of this Order shall be binding on Bowden, upon any *1321 person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Bowden, and upon any person who receives actual notice of this Order by personal service or otherwise insofar as such person is acting in active concert or participation with Bowden.

H. Jurisdiction Retained
IT IS FURTHER ORDERED THAT this Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.[*]
NOTES
[*] For a period of sixty (60) days.